**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

GLOBAL IP HOLDINGS, LLC
12400 VENTURA BOULEVARD, #635,
STUDIO CITY, CALIFORNIA 91604
                                   Plaintiff,

v.                                                        CIVIL ACTION NO. 1:26-cv-2277

COLUMBIA CARE EASTERN VIRGINIA, LLC
4012 SEABOARD COURT
PORTSMOUTH, VIRGINIA 23701.
                                   Defendant

## COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiff Global IP Holdings, LLC (Global), by and through its undersigned

counsel, alleges as follows for its Complaint against Defendant Columbia Care Eastern Virginia,

LLC (CCEV).

## THE NATURE OF THIS ACTION

2.      Plaintiff brings this action against CCE pursuant to 35 U.S.C. § 1, et. seq.

including without limitation 35 U.S.C. §§ 271, 281, 283, 284, & 285 inclusive, based on

Defendant's unauthorized use of the patented processes described in U.S. Patent Nos. 10,507,407

and 10,814,248 (collectively, "the Patents-in-Suit").  Defendant has infringed the Patents-in-Suit,

thereby necessitating this lawsuit.

## THE PARTIES

3.      Plaintiff is a California limited liability corporation having a principal address at

12400 Ventura Blvd., #635, Studio City, California 91604.  Plaintiff is the owner of the Patents-

in-Suit by assignment.

4.      Defendant Columbia Care Eastern Virginia, LLC is a Virgina corporation with

offices at 4012 Seaboard Court, Portsmouth, Virginia 23701, in this judicial district. CCEV uses

the patented process and makes, uses, offers to sell, and sells products made using the patented process throughout Virginia.

5.    CCEV is a subsidiary of Verano Holdings, LLC, a Delaware company with its headquarters at 224 W. Hill Street, 4th Floor, Chicago, Illinois 60610.   Upon knowledge information and belief, all of the Verano subsidiaries are under common management and operational control and all operate with a common standard extraction operational procedure developed by and under oversight from Verano according to equipment and procedures specified by Verano to maintain consistent extract quality.  The method having been and developed by, among others, laboratory and operational personnel from one or more of the companies acquired by and consolidated under Verano.

## JURISDICTION AND VENUE

6.    This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 271 et seq.

7.    This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§ 271, 281 and 28 U.S.C. §§ 1331 and 1338(a), federal question.

8.    This Court has personal jurisdiction over Defendant because CCEV is incorporated in Virginia and has a regular and established place of business in this district.

9.    Venue is proper in this District for Defendant pursuant to 28 U.S.C. §§ 1400(a), 1400(b) and because Defendant is incorporated in Virginia and maintains a regular and established place of business in this District and has committed acts of infringement, including practicing the patented process, as well as the development, support, use, sale, and offers to sell products produced using infringing processes.

## THE PATENTS-IN-SUIT

10.    Mr. Galyuk, the inventor of the patents-in-suit, was a pioneer in the use of low temperature ethanol extraction.   Mr. Galyuk innovated techniques whereby wax and chlorophyll co-extraction could be substantially reduced while maintaining the effective extraction of desired

cannabinoids, while simultaneously eliminating the dangers associated with highly combustible extraction methods.

11.     The patented method is a significant improvement for extracting and concentrating cannabinoids and terpenes from plant substrates by modifying the operational extraction characteristics of solvent to by-pass undesired constituents of plants throughout the extraction process.  Mr. Galyuk recognized the need to improve on prior extraction, including the most commonly used solvents, hydrocarbons such as hexane, pentane, butane or propane, and knew the limitations of  SCF extraction.   The patented invention is a novel extraction process which includes lowering the temperature of the solvent below $-1$ C and preferably to a range below $-30$ C, and yields a clean cannabinoid/terpene extract.

12.     On December 17, 2019, United States Patent No. 10,507,407 ("the '407 Patent"), entitled "Methods to reduce chlorophyll co-extraction through extraction of select moieties essential oils and aromatic isolates" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").  A true and correct copy of the '407 patent is attached hereto as **EXHIBIT A**.

13.     The '407 Patent claims patent-eligible subject matter and is valid and enforceable.

14.     Plaintiff is the exclusive owner by assignment of all rights, title, and interest in the '407 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '407 Patent.

15.     Defendant is not licensed to the '407 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '407 patent whatsoever.

16.     On October 27, 2020, United States Patent No. 10,814,248 ("the '248 Patent"), entitled "Methods to reduce chlorophyll co-extraction through extraction of select moieties essential oils and aromatic isolates" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").  A true and correct copy of the '248 patent is attached hereto as **EXHIBIT B.**

17.     The '248 Patent claims patent-eligible subject matter and is valid and enforceable.

18.     Plaintiff is the exclusive owner by assignment of all rights, title, and interest in the '248 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '248 Patent.

19.     Defendant is not licensed to the '248 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '248 patent whatsoever.

20.     Together, U.S. Patent No. No. 10,507,407 and U.S. Patent No. 10,814,248 are referred to as the "Asserted Patents."

21.     At all times, Plaintiff has complied with the marking requirements of 35 U.S.C. § 287.

22.     As set forth below and in the attached claim chart, Defendant has practiced and continues to practice the claims of the '407 Patent and the '248 Patent.  By way of example, the attached claim charts describe the production process used by Defendant based upon information obtained by Plaintiff.

### DEFENDANT'S INFRINGING ACTIVITIES

23.     Defendant's infringing activities include extraction of compounds including cannabinoids from hemp plant substrate using the methods claimed in the Asserted Patents. Defendant, as part of the Verano corporate structure, along with all of the Verano subsidiaries which are under common management and operational control and all operate with a common standard extraction operational protocol developed by Verano and its predecessor companies that were acquired and merged, including laboratory and operational personnel from the companies acquired by Verano, to maintain consistent extract quality.

24.     Based upon public information, investigation, personal discussions and informed analysis and evaluation, Defendant has used and uses extraction system equipment, as well as other substantially similar processing equipment, to accomplish extraction of compounds including cannabinoids from hemp plant substrate at a substantially reduced temperature below freezing, in many public instances specifying temperatures below -40C.  As described by Defendant and/or one or more other Verano owned extraction companies, in publications and on-

line postings, the method using this equipment infringes one or more claims of each of the Asserted Patents. Defendant's method, as practiced by Defendant is referred to herein as the Accused Chilled Extraction Method.

25.     On information and belief, Defendant makes adjustments to the Accused Chilled Extraction Method in connection with extracting compounds including cannabinoids from cannabis plant substrate.  The Accused Method nevertheless remains an infringing method in all relevant respects as described herein, despite any such adjustments to the Accused Method.

26.      Defendant uses the equipment to perform ethanol extraction of cannabinoids.

27.     Publicly available materials that describe relevant aspects of the equipment specifically selected by Defendant to practice the Accused Chilled Extraction Method demonstrate its design for chilled extraction.

28.     Defendant uses ethanol or an ethanol-based solvent in the Accused Method.

29.     Defendant operates in the claimed processing in the range of -30C to -50C as developed by the inventor after considerable design and innovation.  The Accused Chilled Extraction Method includes pre-processing comprising lowering the temperature of the solvent to a range of -30 degrees C to -50 degrees C.

30.     During the Accused Method, Defendant brings the cooled solvent into contact with the plant substrate to create an emulsion.  Contact is at a temperature of between -30 degrees C to -50 degrees C.  This information was obtained from public statements and postings of employees and others associated with Defendant and with the development of standard operating procedures used and implemented at Defendant.

31.     The Accused Chilled Extraction Method, through extraction according to the steps of the asserted claims, results in an extraction with reduced wax and chlorophyll.  The product sold by Defendant and the properties of that product demonstrate its high concentration and process of manufacture.  Upon knowledge, information and belief, the extraction protocols used by Defendant were developed based at least in part upon the teachings and industry publications of the inventor of the patents-in-suit.

32.     Defendant's Accused Chilled Extraction Method also includes a step of atmospheric evaporation of the solvent for reduction of the emulsion.  Atmospheric evaporation is accomplished by use of an evaporator which retains and recaptures the evaporated solvent for recirculation and reuse.

33.     The Accused Chilled Extraction Method also includes recovering of solvent from the emulsion.  The ethanol used in the process is separated and retained.

34.     Defendant's Accused Chilled Extraction Method also includes a step of purging to remove remaining solvent from the extract that is substantially free of any lipids and chlorophyll.  Additional processing and/or filtering steps can also be employed to further refine the extract.

35.     On knowledge, common industry best practice, information and belief, Defendants' Accused Chilled Extraction Method utilizes an ethanol solvent that is comprised of 95% ethanol and 5% of a solvent that does not comprise ethanol.  Ethanol and ethanol-based solvents, commonly used in modern cannabis extraction processes are available as 100% food-grade ethanol or as a denatured ethanol solvent that contains a high percentage of ethanol mixed with a non-ethanol co-solvent or denaturing agent.  A commonly-used denatured ethanol solvent of 95% ethanol and 5% of a non-ethanol solvent. Although lower concentrations of ethanol are commercially available, such lower ethanol concentrations are generally not acceptable for cannabis extraction procedures, because of the resultant difficulty of recovery of cannabinoids during the distillation process.

36.     Upon reasonable knowledge, information and investigation, Defendant uses a 95% ethanol solvent during the extraction process described as  "Ethanol Extraction", "Cold-Ethanol Extraction" or "Cryo-Ethanol Extraction," including one or more of  a common, easily accessible and generally available 95% ethanol + 5% non-alcohol denatured ethanol solvent mix or 200 proof denatured alcohol mix such as 95% ethanol + 5% methanol, or 100%, 200 proof food grade ethanol solvent for their process.

37.     Public evidence of equipment at Verano owned extraction facilities, including CTPharma, MÜV Florida, FGM Processing, and at Pennsylvania facilities, and ethanol extracted product lines at multiple Verano subsidiaries evidence infringement. These product lines include shatter, budder, crumble, Gold, Blue, distillate cartridges, and other crude to market dabbable concentrates. The finished product quality, color, clarity, potency, terpene retention, and absence of substantial post processing are all consistent with the claimed cold ethanol extraction method.

38.     The products produced by the Varano companies cannot be commercially produced at the claimed quality using warm or moderately chilled ethanol extraction. Marketable ethanol shatter, terpene rich budder, clean crumble, and clear ethanol distillate require extraction conditions low enough to avoid substantial co extraction of chlorophyll, lipids, and waxes. Otherwise, the crude oil would darken, oxidize, nucleate, haze, or require additional winterization, dewaxing, remediation, or other post processing which would be inconsistent with the employee public admissions and postings and Verano's own product descriptions. Based on the product family, equipment evidence, employee admissions, and indications that Verano uses to uniform national SOPs, Verano has implemented a common ethanol extraction method across multiple subsidiaries.

### COUNT I:

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,507,407

39.     Plaintiff restates and realleges the preceding paragraphs of the Complaint as if fully set forth herein.

40.     Defendant has infringed and continues to infringe at least claim 1 of the '407 Patent by employing an extraction process that meets each element recited in claim 1.

41.     Defendant has, under 35 U.S.C. § 271(a), directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '407 Patent by using the infringing extraction process described in the attached claim charts.

42.     Upon information and belief, Defendant has no good faith defense to Plaintiff's infringement allegations regarding the '407 Patent.

43.    Plaintiff has been damaged as the result of Defendant's infringement of the '407 Patent, in an amount to be determined at trial, but not less than a reasonable royalty.

44.    On information and belief, Defendant's infringement of the '407 Patent has been willful and merits increased damages. Defendant's infringement has been willful since at least the date of the filing of this complaint.

### COUNT II:

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,814,248

45.    Plaintiff restates and realleges the preceding paragraphs of the Complaint as if fully set forth herein.

46.    Defendant has infringed and continues to infringe at least claim 1 of the '248 Patent by employing an extraction process that meets each element recited in claim 1.

47.    Defendant has, under 35 U.S.C. § 271(a), directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '248 Patent by using the infringing extraction process described above and in the attached claim charts.

48.    Upon information and belief, Defendant has no good faith defense to Plaintiff's infringement allegations regarding the '248 Patent.

49.    Plaintiff has been damaged as the result of Defendant's infringement of the '248 Patent, in an amount to be determined at trial, but not less than a reasonable royalty.

50.    On information and belief, Defendant's infringement of the '248 Patent has been willful and merits increased damages. Defendant's infringement has been willful since at least the date of the filing of this complaint.

### PRAYER FOR RELIEF

A.    For a judgment declaring that Defendant has infringed claims of the '407 Patent-in-Suit.

B.      For a judgment declaring that Defendant has infringed claims of the '248 Patent-in-Suit.

C.      For a judgment enjoining Defendant from further infringement of the '407 Patent-in-Suit.

D.      For a judgment enjoining Defendant from further infringement of the '248 Patent-in-Suit.

E.       For a judgment declaring that Defendant's infringement of the Patents-in-Suit has been willful and for enhancement of damages in accordance with 35 U.S.C. 284;

F.      For a judgment awarding Plaintiff compensatory damages as a result of Defendant's infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the Patents-in-Suit in an amount to be determined;

G.      For a judgment declaring that this case is exceptional and awarding Plaintiff its expenses, costs and attorneys' fees in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

H.      For a judgment awarding Plaintiff prejudgment interest pursuant to 35 U.S.C. § 284, and a further award of post judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid;

I.      For a judgment awarding Plaintiff enhanced damages under 35 U.S.C. § 284; and

J.      For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure Rule 38(b), Plaintiff hereby demands trial by jury as to all claims in this litigation.

Dated: July 27, 2026

Respectfully submitted,

/s/ Erik N. Lund

Erik N. Lund
elund@dnlzito.com
Joseph J. Zito (*pro hac pending*)
jzito@dnlzito.com
DNL ZITO
1250 Connecticut Ave., NW #700
Washington, DC 20036
202-466-3500

*Attorneys for Plaintiff*
*Global IP Holdings, LLC*